LITZ, Appellant, v. ARBEITER, Respondent.

(233 N. W. 914.)

(File No. 6970.   Opinion filed December 30, 1930.)

*Wm. H. Glynn,* of Parkston, and *Miller & Shandorf,* of Mitchell, for Appellant.

*Bogue & Bogue,* of Parker, and *H. G. Giddings,* of Mitchell, for Respondent.

MISER, C.   The car of appellant, Litz, was being driven north on highway No. 37 at the rate of about 15 miles per hour when it reached an intersection near Ethan of an east and west road along which respondent, Arbeiter, was driving his car.   How many miles per hour Arbeiter was driving his car as it approached the intersection from the west does not appear from the testimony. One of the witnesses whose car had been following the Litz car testified as to the speed of the Arbeiter car thus: "I saw this car from the west.   It was just a streak. * * * I could see this car coming very fast. * * * He just went bang into the other car, and that was all there was to it.   The car from the west struck the car in front of us."   The Litz car was going north on the right-hand

side of the north and south road, and was halfway across the east and west road when struck by the Arbeiter car. At the moment of impact, the Arbeiter car was headed northeast.

Litz sued Arbeiter for damages to his car, claiming that Arbeiter's negligence consisted in driving at an excessive rate of speed and in failing to give the driver of the Litz's car the right of way at the intersection. At the close of plaintiff's testimony, the court granted defendant's motion for a directed verdict on account of plaintiff's contributory negligence. In directing the jury to return a verdict for defendant, the learned trial judge said, inter alia:

"The evidence in this case, including the testimony of the young lady who was driving the plaintiff's car, is undisputed that as she approached this corner she looked first to the right and saw no car approaching and then she looked to the left and saw this car bearing down upon her. At that time she was on, or almost on, the intersection and continued to drive into the intersection and was struck by the car. It is the theory of the law adopted by this court that it was the duty of the young lady who was driving the car to have looked both to the left, and to the right as she approached this intersection and to have looked to the left and the right in sufficient time so she would have been able to have stopped the car before entering upon the intersection. * * * So that assuming all the testimony of the plaintiff's witnesses to be true as a matter of law, it is the opinion of the court that she could not recover because of her failure to exercise this duty to look to the left in time to avoid this accident on the intersection."

Taking the testimony most favorable to appellant, as, under the circumstances, we must do, further details of the collision are as follows: Plaintiff Litz was riding in the front seat. His stepdaughter, Miss Kelly, an experienced driver, was driving the car. Litz's wife and daughter were riding in the back seat. The car had passed the crest of a little hill, and the driver had taken her foot from the foot-feed. She testified:

"After I got to the top of the hill, I was coasting a little, I had my foot on the brake a little, so it wasn't going fast. * * * When I got a ways from the intersection I looked to the right and I saw no car coming from there; and then I looked to the left, and I saw the other car coming onto the highway. I couldn't tell

how fast it was coming. It was only a little ways from me when I saw it. We were just about on the intersection. As soon as I saw this other car, I took a swing to the east, because I saw it was close, and I swung out to the east and kept on going. When I first saw the other car I was on the east side of the center, that is on the right hand side of the road. I had got to about the center of the intersection when the other car struck me."

It might appear from the testimony quoted that Miss Kelly had made a right turn at the intersection, but this is cleared up by the testimony of Litz as follows:

"The girl swerved the car to the east, clear off the gravel. * * * My car was in the center of the east and west road, and his car struck us. We were going north and he was going northeast when he hit us. * * * I first saw the defendant's car just as he approached the highway. We were just coming on the intersection. We were at that time on the right hand side of the road. We were not yet quite on the intersection. When I first saw him he was in the east and west road. I was going north. He was not turning north at that time. He was headed to go east. I didn't see him turn north. He said he turned north. * * * The tracks showed he had started to turn north just before he hit us. * * * Arbeiter tried to turn north but he couldn't make it."

Litz also testified:

"As we came near the crossings we slowed down—I should judge around 12 or 15 miles—and just as we were coming on the crossroad, his car was coming from the west. I saw it just before it got on the north and south highway. I told the girl to look out. She had just had time to make a little turn, but he was going so fast, he came so close, he followed us right around and turned us around and himself. We were facing south after the accident and he was facing west."

The front end of the Litz car was not damaged. The right front end, fender, and bumper of the Arbeiter car struck the Litz car back of the left front fender and caved in both front and rear doors, running board, and rear fender on left side. Immediately after the collision Arbeiter said that the accident was his fault; that he was driving too fast; that, when he saw the Litz car, he tried to turn to the north in order to avert the collision. It should also be added that whereas the Litz car was coming down a slight

incline, to and through the intersection, the Arbeiter car was mounting an incline to reach the intersection. It is not certain whether the Litz car reached the intersection first or whether the Arbetier car reached the intersection first or whether both arrived simultaneously. The position of the Litz car at the time of the impact, together with the uncontradicted evidence that the Litz car was going not to exceed 15 miles an hour and the Arbeiter car at a much greater rate of speed, indicate that the more slowly moving Litz car had entered the intersection before the more rapidly moving Arbeiter car.

If both cars arrived at the intersection practically simultaneously, the Litz car, being on the right, would have had the right of way under subdivision 2 of section 8653, R. C. 1919, as amended by chapter 267, Laws of 1919. However, the mere fact that a vehicle has the right of way over another at a highway intersection does not relieve the driver of the vehicle thus favored from the duty of exercising due care to avoid a collision. Note, 37 A. L. R. 509, et seq. :

"The possession of this right [the right of way] does not, of course, justify the possessor in plunging ahead regardless of consequences nor in failure to exercise ordinary care to avoid injury to others, but the fact is an important one to be considered in deciding the question of negligence. He approaches a crossing expecting and entitled to expect that one approaching from the left will recognize his right, and his conduct is to be judged of in view of that circumstance. Zimmerman v. Mednikoff, 165 Wis. 333, 162 N. W. 349." Glatz v. Kroeger Bros. Co., 168 Wis. 635, 170 N. W 934, 936. Berry Auto (6th Ed.) Vol. 1, § 219.

In Babbit Motor Vehicles (3d Ed.) § 535, p. 353, the rule is stated thus :

"The driver having the right of way is not guilty of negligence in proceeding unless he sees, or should see in time to avoid a collision, that the other car is not going to respect his right of way, but he is negligent if he holds his course stubbornly although he sees that a collision is imminent although he has the right of way, as where he notices cars approaching from the left, he is bound to watch them although he has the right of way and must look for cars from the right, but he may not be negligent if he merely fails to observe the speed of a car approaching from the left." Huddy,

Auto. (8th Ed.) § 313, supports the following statement with many citations:

"But the fact that one is entitled to the right of way at the intersection is a very material element in determining whether he has exercised the required degree of vigilance. Manifestly, the driver of a machine cannot look in both directions at the same time, and a question for the jury is usually presented as to the negligence of the respective parties. He may be required to keep a look-out for cars approaching from his left; and, if he fails in this respect, he may be charged with negligence. It is a question for the jury whether he is negligent in failing to look toward the left. [Citing Doersam v. Osmalek [202 App. Div. 621] 194 N. Y. S. 872; Woodruff v. Ewald, 131 Wash. 285, 230 P. 149] but, until he discovers to the contrary, he is entitled to assume that he will be accorded the right of way. [Citing among others, Carlson v. Meusberger [200 Iowa 65], 204 N. W. 432; McCaffery v. Automobile Liability Co., 176 Wis. 230, 186 N. W. 585; Carson v. Leet, 186 Wis. 566, 203 N. W. 394]."

See, also, notes on the duty of one having the right of way to use due care found in 21 A. L. R. 988, 37 A. L. R. 509 et seq., and 47 A. L. R. 613 et seq. Respondent cites Smith v. Ormiston, 242 Mich. 600, 219 N. W. 618, but see Grodi v. Mierow, 244 Mich. 511, 221 N. W. 637.

Here the plaintiff and the driver of his car did see defendant's car about the time that it entered the intersection. Had they looked to the left and seen the car a moment or two earlier, farther distant from the intersection than their own car, it is not certain from the evidence that it would have been their duty to stop. It is at least doubtful whether there would have been any collision between these cars if the Arbeiter car had continued east on its right side of the road instead of unexpectedly turning north with the Litz car. It is not clear that it was, or should have been, apparent to the driver of the Litz car that the driver of the Arbeiter car, coming up an incline, could not or did not intend to stop. Miss Kelly testified that she could not tell how fast the Arbeiter car was coming. Although the evidence is susceptible of the construction placed upon it by the learned trial judge, nevertheless we are of the opinion that, in granting defendant's motion for a directed verdict, he overlooked some circumstances which

made the question of contributory negligence on the part of the plaintiff a question for the jury, and failed to give to plaintiff's evidence that favored consideration to which it is entitled on such a motion.

The judgment and order appealed from must be, and they are, reversed.

BROWN, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.