Oelke, Plaintiff, vs. Earle and others, Defendants and Respondents: Maxfield and another, Impleaded Defendants and Appellants.

*December 5, 1955—January 10, 1956.*

For the appellants there was a brief and oral argument by *Thomas J. Regan* of Milwaukee.

For the respondents there was a brief and oral argument by *James W. Lane* of Milwaukee.

CURRIE, J. The appellants Maxfield and his insurance carrier contend on this appeal that there is no credible evidence to sustain the jury's finding of causal negligence as to speed on the part of Maxfield. On the other hand, the defendants Earle and American Automobile Insurance Company maintain that it was error for the trial court not to have changed the answer "No" to "Yes" made by the jury

to the question which inquired as to whether the negligent lookout of Maxfield was an efficient cause of the collision. Inasmuch as the correction of said alleged error so raised by the defendants Earle and her insurance carrier would support the judgment appealed from, it was not necessary for said defendants to file any motion for review in order to raise such issue here. Sec. 274.12 (2), Stats.; *State v. Biller* (1952), 262 Wis. 472, 478, 55 N. W. (2d) 414; and *Wegner v. Chicago & N. W. R. Co.* (1952), 262 Wis. 402, 412, 55 N. W. (2d) 420.

In so far as the questions raised on this appeal are concerned, the jury's answers to the comparative-negligence question are mere surplusage, because if there was any causal negligence on the part of Maxfield the judgment of contribution appealed from must be affirmed. Our review of the testimony in the record leads to the inescapable conclusion that Maxfield's negligence as to lookout was causal as a matter of law. In view of this conclusion it becomes unnecessary to pass on the question raised by the appellants as to Maxfield's speed, and we can perceive of no useful purpose to be gained in discussing such issue.

Both drivers testified that immediately prior to the accident their vehicles were being operated at a speed of 20 to 25 miles per hour. At the trial Maxfield testified that he made his first observation to the right, which was the direction from which the Earle car was approaching, when he was about one third of a block south of the intersection, but that the newspaper shack obstructed his view to the east. However, at his adverse examination he had testified that he made his first observation to the east when his truck was but 10 or 15 feet south of the south curb line of the intersection. Maxfield further testified that he made no further observation to his right or east until he was about at the center of the intersection, or a few feet south thereof, and that he did not see the Earle automobile until the moment of the colli-

sion. The front of the Maxfield truck struck the left side of the Earle automobile.

On this appeal we must accept as a verity the jury's finding with respect to Maxfield having proceeded into the intersection with the traffic lights showing green as to traffic moving on North Seventh street and red as to vehicles traveling on West Center street. However, even though Maxfield thereby had the right of way over the Earle automobile, it was still Maxfield's duty to maintain a proper lookout as to vehicles approaching the intersection from his right on West Center street. *Bailey v. Zwirowski* (1954), 268 Wis. 208, 212, 67 N. W. (2d) 262; *Gibson v. Streeter* (1942), 241 Wis. 600, 602, 6 N. W. (2d) 662.

If, when Maxfield made his first observation to the east on approaching the intersection, the newspaper shack so obstructed his vision as to prevent him from seeing the approaching Earle car, then it was his duty to make a further observation to the east at a point which would have enabled him to take effective steps to avoid a collision. *Bailey v. Zwirowski, supra.* This Maxfield failed to do according to his own testimony.

In determining whether the found negligence of Maxfield as to lookout constituted a proximate cause of the collision as a matter of law, the test to be applied is whether such negligence was a substantial factor in producing such collision. *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 237, 55 N. W. (2d) 29. If there was a direct causal connection between Maxfield's negligence as to lookout and the collision, then such negligence was a substantial factor in producing such collision. Applying such test, it follows as a matter of law that Maxfield's failure to maintain a proper lookout constituted a proximate cause of the collision.

For other decisions by this court, where the jury in an intersection accident found negligence as to lookout as to

one of the parties and also found such negligence not to be causal, and this court held that such negligence was causal as a matter of law, see *Peterson v. Simms* (1926), 189 Wis. 517, 208 N. W. 264; *Bodden v. John H. Detter Coffee Co.* (1935), 218 Wis. 451, 261 N. W. 209; and *Merkle v. Behl* (1955), 269 Wis. 432, 69 N. W. (2d) 459. Two further cases in which this court determined that there was causal negligence as to lookout as a matter of law are: *Haggerty v. Rain* (1922), 177 Wis. 374, 186 N. W. 1017; and *Manchuk v. Milwaukee E. R. & L. Co.* (1940), 235 Wis. 579, 294 N. W. 42.

The causal negligence of Maxfield as to lookout supports the judgment for contribution against Maxfield and his insurance carrier, and, therefore, such judgment must be affirmed.

*By the Court.*—Judgment affirmed.